UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>VINCENT MARENTES, et al.,<br><br>        Defendants. | Case No. 15-CV-02289-LHK<br><br>**ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 20, 24, 27, 32 |

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brings this declaratory relief action against Defendants Liudmela Bichegkueva ("Bichegkueva") and Vincent Marentes ("Marentes"). Before the Court are motions to dismiss filed by Bichegkueva and by Marentes, as well as State Farm's motions to strike exhibits filed with Defendants' motions to dismiss. *See* ECF No. 1 ("Compl."); ECF No. 16-1 ("Bichegkueva Mot."); ECF No. 21 ("Marentes Mot."); ECF Nos. 24 & 27 ("Mots. to Strike"). State Farm has also filed a motion for summary judgment. ECF No. 32. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS with prejudice Bichegkueva and Marentes' motions to dismiss. The Court DENIES State Farm's motions to strike and DENIES as moot State Farm's motion for summary judgment.

**I.      BACKGROUND**

United States District Court
Northern District of California

**A. Factual Background**

On June 16, 2013, "Marentes was driving a 2011 Dodge 5500 tow truck owned by his employer Extreme Towing, Inc. during the course and scope of his employment, when he rear-ended Liudmela Bichegkueva." Compl. ¶ 13.  On December 12, 2013, Bichegkueva filed in San Francisco Superior Court a negligence action against Marentes and Extreme Towing arising out of the June 16 incident. *Id.* ¶ 16.  This case was later transferred to Santa Clara County Superior Court, and shall be referred to in this Order as the "State Court Action."

Shortly after Bichegkueva filed her complaint in the State Court Action, Marentes requested that State Farm provide him with a defense and, if necessary, indemnify him against any settlement or judgment.  State Farm "initially denied coverage, as the tow truck [was] not an insured vehicle under [Marentes' insurance] policy." *Id.* ¶ 17.  According to State Farm, Marentes' insurance policy with State Farm covered only Marentes' 2003 Chevrolet Impala, and not the 2011 Dodge 5500 that Marentes was driving when he rear-ended Bichegkueva.  *Id.* ¶ 8.  As a result of State Farm's decision, Marentes and Marentes' employer, Extreme Towing, retained private counsel to represent them in the State Court Action.

On or about December 30, 2014, Marentes and Bichegueva entered into a settlement agreement in the State Court Action. *Id.* ¶ 18.  This agreement contained two terms pertinent to the instant action.  First, under the settlement agreement, Marentes stipulated to "vacating the Answer filed on his behalf" in the State Court Action and "allow[ing] a default to be entered against him." *Id.*  Thereafter, Bichegueva would "schedule a prove-up hearing for a judicial determination of total damages and entry of judgment against Marentes." *Id.*  Second, Marentes agreed to assign and transfer to Bichegueva "any and all claims and causes of action Marentes [might] now have or hereafter acquire against State Farm arising out of State Farm's denial of Marentes' tender as set forth above." *Id.*

On February 23, 2015, Bichegueva's counsel notified State Farm of the settlement agreement, and gave State Farm one "last opportunity to defend Mr. Marentes."  ECF No. 17 (Exh. 12 at 9).  Should State Farm decline this opportunity, Bichegueva would "proceed forward

2

United States District Court
Northern District of California

and have a default and judgment entered against [Marentes]." *Id.*  On March 12, 2015, State Farm notified Bichegueva that State Farm would begin providing a defense for Marentes.  *Id.* at 9.  State Farm's counsel thereafter failed to file any documents in state court challenging the terms of the settlement agreement or asserting a coverage defense.  On April 21, 2015, Bichegueva filed in Santa Clara County Superior Court a motion to enforce the settlement agreement against Marentes.  ECF No. 18 (Exh. 10 at 5).  On May 15, 2015, State Farm filed an opposition to Bichegueva's motion.  ECF No. 17 (Exh. 12 at 6).  State Farm argued against enforcement of the settlement agreement because Marentes could not, under Marentes' insurance policy with State Farm, assign any rights to Bichegkueva without State Farm's prior approval.  *Id.* at 5.

At a hearing held on May 19, 2015, Judge Joseph Huber, the presiding judge in the State Court Action, rejected State Farm's arguments.  Judge Huber stated that he "c[ouldn't] do anything" at the time with respect to State Farm's arguments, since the parties—Marentes and Bichegkueva—had entered into a stipulated settlement and order.  ECF No. 43-2 (Exh. B.at 4).  Judge Huber further stated, to State Farm, that "[y]ou're going to have to file a motion or interpleader or do whatever you think is necessary to change the situation.  I don't have anything I can do."  *Id.*  When State Farm's counsel asserted that State Farm would file a motion for reconsideration, Judge Huber invited State Farm to do so on at least two separate occasions.  *Id.* at 4, 5.  At the hearing's conclusion, Judge Huber struck Marentes' answer in the State Court Action and entered default against Marentes pursuant to the settlement agreement.  ECF No. 16-2 (Exh. 2 at 15–17).  Bichegueva's prove-up hearing remains pending.

**B.  Procedural History**

On May 21, 2015, State Farm filed the instant complaint in the U.S. District Court for the Northern District of California.  State Farm's complaint contains two causes of action: one cause of action seeking "a declaration that State Farm has no duty . . . to defend Marentes from any claims brought against him by Liudmela Bichegkueva," and one cause of action seeking "a declaration that State Farm has no duty . . . to indemnify Marentes from any claims brought

United States District Court
Northern District of California

1    against him by Liudmela Bichegkueva."  Compl. ¶¶ 22, 24.  On July 20, 2015, Bichegkueva filed

2    a motion to dismiss, and on July 21, 2015, Marentes filed a motion to dismiss.  ECF No. 16-1

3    ("Bichegkueva Mot."); ECF No. 21 ("Marentes Mot.").  State Farm filed oppositions to these

4    motions on August 3, 2015 and August 4, 2015, respectively.  *See* ECF No. 23 ("Bichegkueva

5    Opp'n"); ECF No. 26 ("Marentes Opp'n").  Both Bichegkueva and Marentes filed replies on

6    August 10, 2015.  *See* ECF No. 30 ("Marentes Reply"); ECF No. 31 ("Bichegkueva Reply").  On

7    August 26, 2015, State Farm moved for summary judgment.  ECF No. 32.  Marentes and

8    Bichegkueva filed a joint opposition to State Farm's motion on September 9, 2015, and State Farm

9    filed a reply on September 16, 2015.  *See* ECF No. 39; ECF No. 40.

## II.    JUDICIAL NOTICE

11           Defendants filed several exhibits with Defendants' motions to dismiss.  State Farm has

12   moved to strike these exhibits.  *See* ECF Nos. 24 & No. 27.  State Farm's motions to strike fail to

13   comply with Civil Local Rule 7-3(a), which provides that "[a]ny evidentiary and procedural

14   objections to the motion must be contained within the brief or memorandum [in opposition]."

15   State Farm should have included any evidentiary objections to Defendants' exhibits in State

16   Farm's oppositions, not in separate motions.  Because State Farm has failed to comply with Civil

17   Local Rule 7-3(a), the Court DENIES State Farm's motions to strike.

18           However, the Court takes judicial notice of only four of Defendants' exhibits—Exhibits B,

19   2, 10, and 12—which the Court relies upon in this Order.  Exhibit 10 is a copy of Bichegkueva's

20   motion to enforce the settlement agreement, filed on April 21, 2015 in Santa Clara County

21   Superior Court.  ECF No. 18 (Exh. 10).  Exhibit 12 is a copy of State Farm's opposition to

22   Bichegkueva's motion, filed on May 15, 2015 in Santa Clara County Superior Court.  ECF No. 17

23   (Exh. 12).  Exhibit B is a copy of the transcript from May 19, 2015 proceedings held in Santa

24   Clara County Superior Court.  Finally, Exhibit 2 is a copy of the May 19, 2015 Order filed in

25   Santa Clara County Superior Court striking Marentes' answer from the State Court Action and

26   entering default against Marentes pursuant to the settlement agreement.  ECF No. 16-2 (Exh. 2).

27

28
Case No. 15-CV-02289-LHK
ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   All four of these Exhibits are subject to judicial notice.  *See Reyn's Pasta Bella, LLC v. Visa USA,*

2   *Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that "court filings and other matters of public

3   record" are subject to judicial notice); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

4   2011) ("[A] may take judicial notice of matters [in the] public record.").  Because the Court does

5   not rely upon any other exhibits, the Court need not take judicial notice of any other exhibits.

6          Accordingly, State Farm's motions to strike are DENIED, and the Court takes judicial

7   notice of Exhibits B, 2, 10, and 12.

8   **III.    LEGAL STANDARD**

9       **A.  Motion to Dismiss**

10         The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy

11   within its jurisdiction . . . any court of the United States, upon the filing of an appropriate

12   pleading, *may* declare the rights and other legal relations of any interested party seeking such a

13   declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis

14   added).  Though "a District Court cannot decline to entertain such an action as a matter of whim or

15   personal disinclination," *Pub. Affairs Assocs., Inc. v Rickover*, 369 U.S. 111, 112 (1962) (per

16   curiam), "[t]he exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. §

17   2201(a), is committed to the sound discretion of the federal courts."  *Huth v. Hartford Ins. Co. of*

18   *the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (citation omitted).  "Even if the district court has

19   subject matter jurisdiction, it is not required to exercise its authority to hear [a] case." *Id.* (citation

20   omitted).  Congress, by instituting the Declaratory Judgment Act, "sought to place a remedial

21   arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new

22   form of relief to qualifying litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

23         In particular, under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 495

24   (1942), the U.S. Supreme Court held that a federal district court sitting in diversity and presiding

25   over an action for declaratory relief may decide to dismiss the federal court action if, as in this

26   case, another suit is pending in state court, between the same parties, and presenting the same

27

28   Case No. 15-CV-02289-LHK
     ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

5

1    issues of state law.  The *Brillhart* Court proceeded to provide a non-exhaustive list of factors that a

2    court might consider in determining whether or not to exercise jurisdiction over a particular case.

3    *See id.* ("The federal court may have to consider whether the claims of all parties in interest can

4    satisfactorily be adjudicated in [the state] proceeding, whether necessary parties have been joined,

5    whether such parties are amenable to process in that proceeding, etc.").  In *Government Employees*

6    *Insurance Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc), the Ninth Circuit codified

7    the key *Brillhart* factors as follows: (1) "[t]he district court should avoid needless determination of

8    state law issues;" (2) "it should discourage litigants from filing declaratory actions as a means of

9    forum shopping"; and (3) "it should avoid duplicative litigation."  *See also id.* n.5 (citing other

10   factors that a district court may consider in determining whether to exercise jurisdiction).

11   **B.  Leave to Amend**

12        Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

13   granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

14   decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d

15   1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

16   Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the

17   opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

18   *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

19   **IV.    DISCUSSION**

20   **A.  *Brillhart***

21        In reviewing the instant motions to dismiss, the Court shall begin by analyzing the three

22   *Brillhart* factors specifically identified by the Ninth Circuit in *Dizol*.  The Court shall then review

23   whether any other factors point in favor of or against dismissal.

24   **1.  Needless Determination of State Law Issues**

25        With respect to the first *Brillhart* factor, the Court finds that dismissal would "avoid

26   needless determination of state law issues."  *Dizol*, 133 F.3d at 1225.  The issues presented in the

27

28   Case No. 15-CV-02289-LHK
     ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
     MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*Northern District of California*

instant case center solely on disputes over California insurance law.  State Farm has failed to demonstrate why these legal issues should be resolved in a federal forum.  *See, e.g.*, *Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1183 (C.D. Cal. 2014) ("A 'needless determination of state law' may involve . . . a lawsuit with no compelling federal interest (e.g., a diversity action)").

More importantly, allowing State Farm to move forward with this case would require the Court to make a *needless determination* with respect to these state law issues.  In the instant case, State Farm's essential defense is that "[t]here is no coverage for the claim asserted by Liudmela Bichegkueva against Marentes, because the tow truck is not a covered vehicle as defined by the Auto Policy."  Compl. ¶ 20.  State Farm has offered the Court no reason as to why this defense was not presented in the State Court Action.  Indeed, there were numerous opportunities for State Farm to present the instant claims in the State Court Action.

First, State Farm knew that Marentes was being sued by Bichegkueva by December 2013, when Marentes "requested that State Farm provide him with a defense with respect to the [State Court] Action."  *Id.* ¶ 17.  In response to Marentes' request, State Farm "initially denied coverage, as the tow truck is not an insured vehicle under [Marentes'] policy."  *Id.*  In other words, State Farm knew early on about the coverage defense that State Farm has put forward before this Court, and in fact asserted this defense when State Farm denied Marentes coverage at the outset of the State Court Action.

Second, in March 2015—more than a year later—State Farm informed Bichegkueva that State Farm would begin providing a defense to Marentes.  Nonetheless, after so informing Bichegkueva, State Farm did not file any motions or other documents in the State Court Action.  State Farm has given no reason as to why it chose to sit on its rights.  In April 2015, Bichegkueva filed a motion to enforce the settlement.

Third, on May 15, 2015, four days prior to the hearing on Bichegkueva's motion to enforce the settlement, State Farm finally filed a brief in opposition.  In this opposition, State Farm argued that "Marentes's assignment of rights to [Bichegkueva] in the Settlement Agreement [was]

7

Case No. 15-CV-02289-LHK
ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT MOTION FOR SUMMARY JUDGMENT

1    contrary to [the] terms of the insurance policy into which [Marentes] entered and [was] thus

2    unenforceable." ECF No. 17 (Exh. 12 at 5).  State Farm chose not to present its coverage defense

3    in its opposition to Bichegkueva's motion to enforce the settlement.  State Farm has cited no

4    authority that allows State Farm to pick some defenses to litigate in state court and other defenses

5    to litigate in federal court.

6            Fourth, at the May 19, 2015 hearing, Judge Huber declined to address State Farm's

7    specific arguments.  ECF No. 43-2 (Exh. B.at 2).  However, Judge Huber invited State Farm to file

8    a motion for reconsideration, a motion for interpleader, or any other motion in state court.  *Id.* at

9    2–4.  Judge Huber expressly provided State Farm with a forum—Santa Clara County Superior

10   Court—to address all of State Farm's purported defenses.  State Farm could have asserted in the

11   State Court Action the very coverage defense that State Farm now seeks to assert in federal court.

12   Alternatively, State Farm could have asserted this coverage defense in a separate state court action

13   for declaratory relief.  In any event, there is no reason why a federal forum is necessary to

14   determine the issues in this case.

15           Case law supports the Court's reading.  In *Keown v. Tudor Insurance Company*, 621 F.

16   Supp. 2d 1025, 1027 (D. Haw. 2008), Plaintiff filed an action in state court against Plaintiff's

17   insurer, Tudor Insurance, "seeking a declaration that [Tudor Insurance was] obligated to defend

18   and indemnify Plaintiff in a separate Hawaii state action that names Plaintiff as a defendant."

19   Tudor Insurance removed the action to federal court, and Plaintiff filed a motion to remand.  As in

20   this case, the central legal issue in *Keown* was whether Tudor Insurance's decision to deny

21   coverage fell within a particular policy exclusion.  After finding this to be the case's central legal

22   issue, the district court granted Plaintiff's motion to remand, with the district court stating that

23   federal courts "should decline jurisdiction to avoid needlessly determining a state law issue that

24   the Hawaii courts have yet to address."  *Id.* at 1032.  "By granting Plaintiff's Motion for Remand,

25   the Hawaii state courts can determine the proper scope of the[] exclusions [at issue]."  *Id.*

26           Consonant with *Keown*, many district courts within the Ninth Circuit have remanded or

27

28   Case No. 15-CV-02289-LHK
     ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

8

dismissed cases where, as here, an insurer brings an action in federal court solely to obtain declaratory relief over what is essentially a dispute over state law. *See, e.g.*, *Catholic Foreign Mission Soc. of Am., Inc. v. Arrowood Indem. Co.*, 76 F. Supp. 3d 1148, 1158 (D. Haw. 2014) (granting motion to remand because insurance law dispute and choice of law dispute were issues better left to state court); *Medmarc Ins. Co. v. Berkeley Prop., Inc.*, 2003 WL 21018205, *3 (N.D. Cal. Apr. 29, 2003) (granting motion to dismiss because insurance law disputes "raise[] questions exclusively of state law").  Consistent with the holdings in these cases, the Court sees no reason why the instant action should not be dismissed.

State Farm's arguments to the contrary lack merit.  First, State Farm argues that it was not a party in the State Court Action.  This argument, however, is belied by State Farm's very own representations.  As State Farm admits, State Farm agreed to provide Marentes a defense.  In fact, in opposing Bichegueva's motion to enforce the settlement agreement, State Farm designated itself as the real party in interest.  ECF No. 17 (Exh. 12 at 4).  State Farm cannot, after making these representations in state court, turn around now and insist in federal court that State Farm is not a party to the State Court Action.

Second, State Farm appears to argue that "[t]he coverage issue to be determined in this action . . . will not be litigated in the underlying personal injury case."  Marentes Opp'n at 5.  The Court finds this argument unpersuasive.  As the Court has noted, the only reason why the coverage issue was not litigated in the State Court Action was because State Farm chose not to do so.  State Farm knew about this coverage defense early on—this defense, in fact, underscored State Farm's initial decision to deny coverage to Marentes.  Over the next two years, State Farm was provided multiple opportunities to intervene in the State Court Action and assert all of its defenses against Bichegkueva.  State Farm chose not to intervene.  Indeed, even after Judge Huber denied State Farm's opposition to the settlement agreement, Judge Huber invited State Farm to file a motion for reconsideration of Judge Huber's Order, so that State Farm could assert any and all defenses against Bichegkueva, but State Farm declined to do so.

Case No. 15-CV-02289-LHK
ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT MOTION FOR SUMMARY JUDGMENT

1    Third, State Farm contends that "[i]t is preposterous to think that the state court would

2    consider a third-party's coverage dispute." *Id.* at 8.  To the contrary, insurance disputes are "an

3    area [of law] that Congress has expressly left to the states."  *Cont'l Cas. Co. v. Robsac Indus.*, 947

4    F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d at 1227.  It is not

5    at all preposterous to believe that the instant claims could have been resolved in state court.

6    In sum, the Court finds that the first *Brillhart* factor—whether federal court action would

7    require needless determination of state law issues—weighs in favor of dismissal.

8    **2.  Forum Shopping**

9    The Court turns next to whether dismissal would discourage forum shopping.  In

10   examining this *Brillhart* factor, courts have looked to whether the declaratory relief action could

11   have been filed in state court and could have been "coordinated with [any] pending state court

12   actions."  *See Great Am. Assurance v. McCormick*, 2005 WL 3095972, *2 (N.D. Cal. Nov. 15,

13   2005) (citing *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997)).  In

14   addition, claims for declaratory relief that are "defensive or reactive" in nature may be indicative

15   of forum shopping.  *Robsac*, 947 F.2d at 1371.

16   These considerations weigh strongly against State Farm.  As the Court has noted, State

17   Farm could have pursued the instant action in state court.  California law in fact provides a

18   declaratory relief cause of action similar to the federal cause of action for declaratory relief.

19   *Compare* Cal Civ. Proc. Code § 1060 ("Any person . . . who desires a declaration of his or her

20   rights or duties with respect to another . . . may ask for a declaration of rights or duties, either

21   alone or with other relief."), *with* 28 U.S.C. § 2201(a) (federal court "may declare the rights and

22   other legal relations of any interested party seeking such declaration, whether or not further relief

23   is or could be sought.").  Thus, the instant causes of action could have been litigated in state court,

24   and could have been coordinated with the State Court Action.

25   The Court also finds this suit to be "reactive" or "defensive."  "A 'reactive' or 'defensive'

26   declaratory judgment action is typically a diversity federal action commenced by an insurer that

27

28   Case No. 15-CV-02289-LHK
     ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

10

1    has already been sued in state court, either by the injured third party or the insured." *Nat.*

2    *Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1117 (D. Ak. 1998).  That is exactly what

3    happened here.  State Farm was a real party in interest to the State Court Action.  State Farm

4    received an unfavorable ruling in that action.  State Farm was invited to file a motion for

5    reconsideration in state court—thereby providing State Farm with a judicial forum to litigate State

6    Farm's defenses.  State Farm instead decided to file suit in federal court.

7    State Farm's only argument to the contrary is that the instant suit is not actually reactive

8    because Bichegkueva has not yet filed a bad faith action against State Farm which, State Farm

9    argues, would finally allow State Farm to raise certain coverage defenses.  The Court is not

10   persuaded.  As the Court has explained, State Farm could have presented the instant coverage

11   defense in the State Court Action.  State Farm chose not to intervene.  Even now, State Farm may

12   raise the coverage defense (and, for that matter, any other defense) in state court.  State Farm has

13   instead chosen to move forward in federal court.  State Farm does appear to be forum shopping.

14   Accordingly, the Court finds that the second *Brillhart* factor—whether dismissal would

15   discourage forum shopping—weighs in favor of dismissal.

16   **3.  Duplicative Litigation**

17   Finally, the Court turns to the third *Brillhart* factor—whether dismissal would avoid

18   duplicative litigation.  With respect to this factor, "the dispositive question is . . .  whether there

19   was a procedural vehicle available to the insurance company in state court to resolve the issues

20   raised in the action in federal court."  *See Polido*, 110 F.3d at 1423.  As the Court has explained,

21   State Farm could have asserted a claim for declaratory relief in state court.

22   State Farm, however, contends that the issues to be resolved in the instant action are

23   different from those at issue in the State Court Action.  According to State Farm, the instant suit

24   involves State Farm's coverage defense, and the State Court Action concerns whether Marentes

25   was negligent and whether Marentes could assign his rights to Bichegkueva.

26   These differences are immaterial.  As the Ninth Circuit has held, "differences in factual

27

28   Case No. 15-CV-02289-LHK
     ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
     MOTION FOR SUMMARY JUDGMENT

11

and legal issues between the state and federal court proceedings are not dispositive because the insurer could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action." *Id.* at 1423 (internal quotation marks omitted). In this case, State Farm could have and should have raised its claims in state court, whether in the State Court Action itself (as State Farm was expressly invited to do by Judge Huber) or in a separate suit in state court. In deciding to pursue an action in federal court, State Farm has eschewed both of these approaches, and has thus created mirror actions in state and federal court. That is duplicative litigation in the most classic sense. The Court therefore finds that the third *Brillhart* factor—whether dismissal would avoid duplicative litigation—weighs in favor of dismissal.

### 4. Other Factors

In addition to the *Brillhart* factors identified above, the Ninth Circuit has also provided a list of additional factors that a federal district court may consider in deciding whether to exercise jurisdiction. These factors include:

> Whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations in issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (internal quotation marks omitted). These factors weigh against State Farm. Allowing State Farm to proceed in federal court would entangle the instant action with litigation already occurring in state court. In addition, State Farm may be seeking declaratory relief in federal court in order to gain a res judicata advantage. That is, State Farm is suing in federal court to receive a favorable ruling on State Farm's coverage defense in advance of any additional litigation in state court. Finally, allowing this action to proceed would not be in the best interest of the parties. There is no reason why Bichegkueva and Marentes should have to litigate in both federal and in state court on what is quintessentially a state law question already being

12

United States District Court
Northern District of California

litigated in state court.

**B. Leave to Amend**

The Court declines to provide State Farm with leave to amend because amendment would be futile and would result in undue delay. *See Leadsinger*, 512 F.3d at 532 (holding that leave to amend shall be denied if amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith). The Court finds futility because the inherent facts of the instant case—the underlying state court litigation, the unfavorable ruling that State Farm received in state court, the fact that State Farm could have and still can resolve its claims and defenses in state court, and the defensive or reactive nature of the instant suit—would not be cured by amendment.

Likewise, the Court finds that allowing amendment would cause undue delay to the resolution of the issues at the heart of this dispute. As the Court has noted, the State Court Action continues to move forward. At this point, federal court involvement would only result in undue and unnecessary delay. The legal issues in this case arise from an incident that occurred over two years ago. These issues should have been, have been, and shall be resolved in state court. Accordingly, Marentes and Bichegkueva's motions to dismiss are granted with prejudice.

**V.     CONCLUSION**

For the foregoing reasons, the Court finds dismissal of the instant action appropriate. In addition, the Court finds that leave to amend would be futile and would cause undue delay. Consequently, the Court GRANTS Marentes and Bichegkueva's motions to dismiss with prejudice. The Court DENIES State Farm's motions to strike. The Court also DENIES AS MOOT State Farm's motion for summary judgment. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 10, 2015

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

13

Case No. 15-CV-02289-LHK
ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTIONS TO STRIKE, AND DENYING AS MOOT
MOTION FOR SUMMARY JUDGMENT